# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA
### MUSKOGEE DIVISION

MARTIN SEGUNDO RIOS FERREIRA,
   Petitioner,

v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security;
TODD LYONS, in his official capacity as
Director of U.S. Immigration and
Customs Enforcement;
JOSH JOHNSON, in his official capacity
as Acting Director of the Dallas Field
Office of ICE, Enforcement and Removal
Operations; and
SCARLET GRANT, Warden of the
Cimarron Correctional Facility,
   Respondents.

Civil Action No.: CIV-25-357-RAW

Immigration No. A 201-666-391

**ORIGINAL VERIFIED PETITION
FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2241,
AND REQUEST FOR TEMPORARY
RESTRAINING ORDER AND
DECLARATORY AND INJUNCTIVE
RELIEF**

**TO THE HONORABLE JUDGE OF SAID COURT:**

### I. INTRODUCTION

1.   Petitioner Martin Segundo Rios Ferreira ("Mr. Rios"), is a native and citizen of Venezuela who has resided in the United States for nearly six years, most recently in The Colony, Texas. He was recently transferred to ICE custody in Texas, and he is currently detained at the Cimarron Correctional Facility under Alien No. 201-666-391 in Cushing, Oklahoma. *See* Ex. A, Proof of Detention in ICE Custody.

2.   Mr. Rios has been placed into removal proceedings before under INA § 240, 8 U.S.C. § 1229a, following his recent arrest by ICE officers at his home in The Colony, Texas. *See* Group Ex. B, Notice to Appear.

1

3.  In recent months, immigration judges have routinely denied requests for a bond hearing to individuals in situations substantially similar to that of Mr. Rios, due to a perceived lack of jurisdiction. These denials have relied on recent Board of Immigration Appeals ("BIA") precedent in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *See* Ex. C, Recent BIA Decisions on Bond. However, numerous federal district court, including some from within the jurisdiction of the Courts of Appeals for the Fifth and Tenth Circuits, have made clear that noncitizens detained under INA § 236(a) are entitled to individualized bond hearings.

4.  Despite this posture, immigration judges continue to refuse to provide noncitizens such as Mr. Rios with an individualized custody redetermination hearing, asserting a lack of jurisdiction based on erroneous Board of Immigration Appeals precedent. The refusal to provide such a hearing violates the INA, the Due Process Clause of the Fifth Amendment, and the APA, because detention in § 240 proceedings is governed by INA § 236(a), which clearly provides that noncitizens are entitled to bond hearings.

5.  Mr. Rios therefore petitions this Court for habeas relief under 28 U.S.C. § 2241, and seeks immediate injunctive relief, including a Temporary Restraining Order ("TRO") directing Respondents to provide him an individualized custody hearing or release him under reasonable conditions without delay.

## II. JURISDICTION AND VENUE

6.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court also has jurisdiction under 28 U.S.C. § 2241, which grants federal district courts authority to hear habeas petitions filed by persons held in custody in violation of federal law or the

Constitution. This action also invokes the Court's authority under the All Writs Act, 28 U.S.C. § 1651.

7. The jurisdiction-stripping provisions of 8 U.S.C. § 1252 do not bar this suit. Petitioner does not challenge a final order of removal, nor seek class-wide relief. Detention-based habeas claims are not channeled by Section 1252(b)(9). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 839–42 (2018). Section 1252(g) is narrowly construed and does not foreclose review of unlawful custody or *ultra vires* attempts to switch a non-final INA § 240 case into expedited removal. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999) (hereinafter also referred to as "*Reno v. AADC*"). Individual injunctive relief is not barred by Section 1252(f)(1). *See Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065–66 (2022).

8. Venue is proper in this District, and in the Tulsa Division, because Petitioner is has been detained at the Cimarron Correctional Facility in Cushing, Oklahoma, within this Court's jurisdiction, whereas his detention is controlled by immigration officers at the Dallas Field Office of ICE – Enforcement and Removal Operations. *See* Ex. A.

### III. PARTIES

9. Petitioner, Martin Segundo Rios Ferreira ("Mr. Rios"), is a 37-year-old citizen and national of Venezuela who has lived in the United States for over five years. He was transferred to the Cimarron Correctional Facility, where he remains detained, following his arrested by ICE at his home in The Colony, Texas. Petitioner is currently in active removal proceedings under 8 U.S.C. § 1229a (INA § 240), for which he currently is scheduled to appear by video teleconference (WebEx) before the Judge Abdias Tida of

the El Paso Immigration Court,[1] despite having already been granted relief from removal by a different immigration judge on July 17, 2025. *See* Group Ex. G. Mr. Rios's next scheduled hearing in his § 240 removal proceedings is currently set for October 21, 2025, at 8:30 a.m. *See* Ex. D, EOIR Automated Case Information System.

10. Respondent KRISTI NOEM is the Secretary of the U.S. Department of Homeland Security ("DHS"). She is sued in her official capacity.

11. Respondent TODD LYONS is the Acting Director of Immigration and Customs Enforcement ("ICE"), an executive branch agency within the Department of Homeland Security. He is sued in his official capacity.

12. Respondent JOSH JOHNSON is the Acting Director of the Dallas Field Office of ICE – Enforcement and Removal Operations ("ERO"), and therefore, he oversees the Alvarado Sub-Office of ERO Dallas, which has jurisdiction over Petitioner. He is sued in his official capacity as Petitioner's local custodian and DHS's local decisionmaker.

13. Respondent, SCARLET GRANT, Warden of the Cimarron Correctional Facility, located at 3200 S. Kings Highway, Cushing, Oklahoma 74023, and she is responsible for housing noncitizens from various regions of Oklahoma in ICE custody pending the completion of their removal proceedings. Respondent is sued in her official capacity as Petitioner's immediate physical custodian as of the filing of this petition.[2]

14. Respondents Noem and Lyons, who represent DHS and ICE, are properly included herein as the executives of federal agencies within the meaning of the Administrative Procedure Act ("APA").

---

[1] The Immigration Court in El Paso, Texas, remains the administrative control docket, despite ICE's transfer of Petitioner to a facility in Texas, likely in an effort to engage in forum-shopping.
[2] Although the undersigned Counsel avers, upon information and belief, that Petitioner remains in ICE custody at present, Petitioner no longer appears in the ICE Detainee Locator. *See* Ex. A-2.

## IV. FACTUAL BACKGROUND

1.   Petitioner Martin Segundo Rios Ferreira was born in El Vigia, Merida State, Venezuela on October 22, 1987. He has made the United States his home for over five years, after entering the United States at the Gateway of the Americas in Laredo, Texas on or about March 6, 2019, and he has lived here continuously since that date.

2.   Mr. Rios worked and lived in Texas until his arrest for a domestic disturbance in March 2025. He was subsequently transferred into ICE custody in April 2025, and his removal proceedings were later terminated when the immigration judge granted his *de novo* application for Temporary Protected Status ("TPS") on July 17, 2025. *See* Group Ex. G, Documentation of Immigration Case History.

3.   On March 6, 2019, the Department of Homeland Security ("DHS") served Mr. Rios with a Notice to Appear ("NTA"), formally charging him as inadmissible to the United States under INA § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(I)] for lacking valid entry documents. *See* Group Ex. B, Notice to Appear.

4.   Critically, Mr. Rios's NTA was issued soon after his entry in March 2019, placing him into regular Section 240 removal proceedings before the immigration court without requiring him to undergo a Credible Fear Interview. In other words, DHS itself recognized that Mr. Rios's claims are sufficiently serious to warrant a full adjudication in immigration court, not a summary expulsion.

5.   Despite the immigration judge's clear grant of TPS status, ICE chose not to release Mr. Rios, and he has been held without charge and without any reason for detention, eventually being transferred to an immigration detention center in Cushing,

Oklahoma, hundreds of miles away from where Mr. Rios had lawfully worked and lived in the North Texas area for over five years.

6.   Despite this posture, Mr. Rios has been treated for bond immigration purposes as though he were subject to the harshest form of "arriving alien" detention, even though he has been properly placed in § 240 proceedings. Instead of being allowed to seek release on bond before an immigration judge, ICE has categorically denied him any chance to demonstrate that he is neither a danger to the community nor a flight risk. This blanket denial is not based on any individualized finding, but on the government's insistence on applying the Board of Immigration Appeals' recent decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Those decisions—issued without notice-and-comment rulemaking, and in direct tension with binding circuit law—purport to strip immigration judges of authority to hold bond hearings for individuals like Mr. Rios.

7.   As a result, Mr. Rios now finds himself locked away at the Cimarron Correctional Facility in Cushing, Oklahoma, a remote facility, even though he has a valid immigration status—Temporary Protected Status for Venezuelans—which does not even expire until November 2025 at the earliest, simply because ICE has illegally refused to honor the immigration judge's lawful, valid grant of TPS and order of termination issued at the immigration court on July 17, 2025. *See* Group Ex. G. Mr. Rios is held under conditions indistinguishable from those reserved for dangerous criminals, despite the absence of any reason that would bar his release—a fact that may lead to additional liability under the Federal Tort Claims Act, but which is not yet ripe for review by this Court. *See* 28 U.S.C. § 1346. Each day of confinement exacerbates the harm—separating him from family and

community support, impeding his ability to consult with counsel, and inflicting the

psychological strain that prolonged and unnecessary detention inevitably produces.

8.  In sum, Petitioner is a man with valid TPS status, deep roots in the United States,

strong claims for humanitarian protection, and no disqualifying criminal record. He has

been thrust into prolonged civil detention solely because of the government's reliance on

recent, non-binding BIA decisions that contravene the plain language of the INA and the

decisions of multiple federal district courts. His detention, absent the possibility of an

individualized bond hearing, is unlawful, arbitrary, and profoundly unjust.

### V. LEGAL FRAMEWORK

**A. Statutory Framework.**

9.  Immigration detention is governed primarily by two provisions of the INA:

Section 235(b) [8 U.S.C. § 1225(b)] and Section 236(a) [8 U.S.C. § 1226(a)]. Whereas

Section 236(a) of the INA authorizes the Attorney General to release noncitizens on bond

pending removal proceedings, in contrast, Section 235(b) applies to certain categories of

"arriving aliens" and mandates detention pending completion of expedited or threshold

screening.

10. Congress designed § 236(a) to govern the detention of individuals who, like

Petitioner, are in regular removal proceedings under § 240. The statutory text expressly

provides for release on bond, subject only to conditions ensuring appearance and

protecting the community.

11. The Supreme Court has confirmed the distinction between these statutory

schemes. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (explaining

differences between § 235(b) mandatory detention and § 236(a) discretionary custody).

7

The Board of Immigration Appeals itself recognized for decades that individuals in § 240 proceedings after entry without inspection were eligible for custody redeterminations. *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006).

12. Despite this clear statutory scheme, DHS has invoked recent BIA decisions (*Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025); *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)) to strip immigration judges of bond authority in cases such as Petitioner's. Those decisions, however, cannot override the plain language of the statute.

13. In recent weeks, multiple district courts in 2025 have directly addressed the Government's efforts to expand § 1225(b)(2)(A) beyond its intended scope by assessing habeas petitions for noncitizens in similar circumstances and have repeatedly concluded that the clear and unambiguous language of Section 236 of the INA permits noncitizens who arrived without inspection—persons in precisely the same legal circumstances as Mr. Rios—are eligible to request bond hearings before the immigration court.

14. For example, in *Santos v. Noem*, 2025 U.S. Dist. LEXIS 183412 (W.D. La. Sept. 15, 2025), the court emphasized that habeas relief is proper to correct statutory misclassification and to preserve the petitioner's due process rights. In *Kostak v. Trump*, 2025 U.S. Dist. LEXIS 167280 (W.D. La. Aug. 27, 2025), the court ordered bond eligibility under § 1226(a), rejecting the Government's assertion that § 1225(b) applied. Likewise, in *Salazar v. Dedos*, 2025 U.S. Dist. LEXIS 183335 (D.N.M. Sept. 17, 2025), the district court ordered an individualized bond hearing under § 1226(a) within seven days, holding that prolonged detention without such a hearing violates the Fifth Amendment's Due Process Clause.

15. Similarly, *Lopez v. Hardin*, 2025 U.S. Dist. LEXIS 188368 (N.D. Tex. 2025), and *Lopez-Arevelo v. Ripa*, 2025 U.S. Dist. LEXIS 188232 (S.D. Tex. 2025), further confirm that courts are rejecting agency efforts to apply § 1225(b)(2)(A) to individuals who are properly subject to § 1226(a).

16. These holdings reflect a growing consensus that district courts retain jurisdiction to intervene where detention rests on a statutory misapplication and results in ongoing constitutional harm. The cumulative weight of these decisions underscores that Mr. Rios is entitled to bond consideration under § 1226(a).

## VI. CLAIMS FOR RELIEF

### Count I – Violation of INA § 236(a) [8 U.S.C. § 1226(a)]

17. Petitioner incorporates by reference the above factual allegations and re-asserts them as though stated fully herein.

18. Respondents' refusal to provide Petitioner with an individualized custody redetermination hearing violates the INA and the decisions of multiple federal district courts, including some in the jurisdiction of the Fifth and Tenth Circuits.

19. INA § 236(a), 8 U.S.C. § 1226(a), provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that the Attorney General "may continue to detain the arrested alien" or "may release the alien on—(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole."

20. By its plain text, Section 236(a) applies to all noncitizens arrested and detained pending removal proceedings unless mandatory detention under § 236(c) applies.

21. In interpreting the plain language of Section 236(a), various federal district courts confirmed that noncitizens detained under Section 236(a) are statutorily eligible for individualized bond determinations before an immigration judge. Thus, the Attorney General must consider bond application by detained aliens pending the outcome of their removal proceedings, since immigration judges retain jurisdiction to conduct custody redetermination hearings under that provision.

22. Although an immigration judge has already granted Mr. Rios relief from removal in the form of TPS and termination of proceedings, Respondents have chosen to ignore the judge's order and returned Mr. Rios to removal proceedings under Section 240 of the INA [8 U.S.C. § 1229a]. Thus, his case remains pending before the detained docket of the El Paso Immigration Court. Because Petitioner is detained in the context of ongoing removal proceedings, his custody is governed by § 236(a), not § 235(b).

23. By adopting a policy refusing to provide Petitioner with an individualized bond hearing that comports with INA § 236(a), Respondents have acted contrary to statutory authority requiring consideration of such bond application. This policy supports the conclusion that the filing of a bond application with the immigration courts is currently a futile endeavor. Petitioner's continued detention without access to an individualized custody redetermination violates the INA and must be corrected through habeas relief.

24. Accordingly, this Court should grant the writ and order that Petitioner receive an individualized bond hearing under INA § 236(a), in line with the decisions of multiple other federal district courts that have already decided this issue in similar, albeit less egregious, cases.

### Count II – Fifth Amendment Due Process Violation

25. Petitioner incorporates by reference the above factual allegations and re-asserts them as though stated fully herein.

26. Petitioner's continued detention without access to an individualized custody redetermination hearing also violates the Due Process Clause of the Fifth Amendment. Prolonged detention without bond review is arbitrary, punitive, and unconstitutional.

27. The Supreme Court has long recognized that "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration detention is civil in nature, but it nonetheless implicates this fundamental liberty interest.

28. Because Petitioner is detained by ICE at the Cimarron Correctional Facility, he is categorically barred from presenting evidence that he is not a danger to the community and that he poses no flight risk. The blanket denial of access to a bond hearing strips Petitioner of the individualized determination required by due process and by the plain language of Section 236(a).

29. Unlike noncitizens subject to mandatory detention for serious criminal offenses under Section 236(c) [8 U.S.C. § 1226(c)], Petitioner has no qualifying convictions that justify a categorical denial of release. His only arrest was conducted by ICE as a result of perceived alienage. The government has no legitimate basis to insist that Petitioner's detention be mandatory, yet he remains confined with no opportunity for release.

30. Denying Petitioner any access to a bond hearing deprives him of procedural protections guaranteed by the Due Process Clause. Moreover, prolonged detention

without meaningful review violates the substantive limits of due process, as articulated in *Zadvydas* and *Demore v. Kim*, 538 U.S. 510 (2003).

31. Petitioner is a long-time resident of the United States, with over five years of continuous presence. He has strong family and community ties in the The Colony area, including his wife, Yelika Mirielys Rojas Lozano, and their two minor children, all of whom were born in Venezuela and have Temporary Protected Status. There has been no finding that he is a danger to the community or a flight risk. Yet, solely because of recent, erroneous BIA decisions—decisions not binding in this Circuit—he has been categorically denied the process to which he is entitled. This amounts to an arbitrary deprivation of liberty in violation of the Fifth Amendment.

32. Accordingly, the Court should grant habeas relief on constitutional grounds and order that Petitioner be afforded an immediate bond hearing, or that he be released from custody pending the final outcome of his Section 240 removal proceedings.

### Count III – Unlawful Agency Action (APA)

33. Petitioner incorporates by reference the above factual allegations and re-asserts them as though stated fully herein.

34. Respondents' continued detention of Petitioner without affording him a bond hearing also constitutes unlawful agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The abrupt departure from longstanding precedent without reasoned explanation violates the Administrative Procedure Act.

35. For decades, immigration judges exercised bond jurisdiction over individuals detained under INA § 236(a), including those who entered without inspection. *See Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006); *see also* Ex. E, Unpublished BIA Bona

Decisions. That framework allowed for individualized custody determinations consistent with both statutory text and constitutional principles.

36. In 2025, the BIA issued *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that certain noncitizens who entered without inspection are subject to mandatory detention under INA § 235(b), 8 U.S.C. § 1225(b). These decisions abruptly stripped immigration judges of bond authority for a large class of detainees, including Petitioner, without notice-and-comment rulemaking and without reasoned explanation for abandoning prior precedent.

37. The APA requires agencies to engage in reasoned decision-making, and prohibits arbitrary or capricious action. 5 U.S.C. § 706(2)(A). The BIA's reversal of decades of established law without acknowledging or adequately explaining its departure is the very definition of arbitrary and capricious action. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016).

38. Although Petitioner has not filed a bond application since entering ICE custody in later September 2025, doing so would be futile, as immigration judges refuse to exercise jurisdiction, expressly relying on this recent BIA policy shift. *See* Ex. F, Sample IJ Bond Decision. By treating individuals such as Petitioner as subject to mandatory detention under Section 235(b), Respondents have applied an unlawful, arbitrary interpretation of the statute that is inconsistent with the plain language of Section 236(a) and unsupported by reasoned analysis.

39. Accordingly, Respondents' refusal to provide Petitioner an individualized custody redetermination hearing constitutes unlawful agency action under the APA, and this Court should grant habeas relief to remedy the violation.

## VII. REQUEST FOR INJUNCTIVE RELIEF (INCLUDING TRO)

40. Petitioner respectfully requests that this Court issue a Temporary Restraining Order directing Respondents to provide him an immediate individualized custody redetermination hearing under INA § 236(a) within seven (7) days, or, in the alternative, to release him under reasonable conditions of supervision. Petitioner further requests preliminary and permanent injunctive relief as appropriate.

41. The Supreme Court has made clear that such extraordinary relief depends on a four-factor test: likelihood of success on the merits, irreparable harm, the balance of equities, and the public interest. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009). As explained below, Petitioner satisfies each of these factors.

**A. Mr. Rios Is Likely to Succeed on the Merits of His Petition.**

42. Mr. Rios has a strong likelihood of success on the merits of his claims. As explained more fully hereinabove, numerous district courts including some from within the Fifth and Tenth Circuits, have already determined that noncitizens in circumstances substantially similar to that of Mr. Rios, who are detained under Section 236(a), are entitled to individualized bond hearings before an immigration judge.

43. Current BIA policy prohibiting immigration judges from exercising jurisdiction over any immigration bond request that Mr. Rios might file—due to the Board of Immigration Appeals' recent decisions in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)—cannot override the clear and unambiguous language of Section 236(a).

14

44. Additionally, Mr. Rios raises a constitutional claim under the Fifth Amendment, as prolonged detention without any opportunity for individualized custody review violates due process.

45. Taken together, these statutory and constitutional grounds present not merely a plausible claim, but a compelling one. Under *Nken v. Holder*, 556 U.S. 418, 434 (2009), likelihood of success is the most critical factor in evaluating interim relief. Here, Petitioner's claim is exceptionally strong, especially since he has already been granted TPS status and Mr. Rios's detention is simply due to ICE's refusal to honor a court order.

**B. Mr. Rios Will Suffer Irreparable Harm If a TRO Does Not Issue.**

46. If this Court does not grant immediate relief, Mr. Rios will continue to suffer irreparable harm. The Supreme Court has recognized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Every day Mr. Rios remains confined without access to the procedures guaranteed by law constitutes a grave and irreversible injury.

47. Even if Mr. Rios were eventually granted a bond hearing after protracted litigation, the harm inflicted by the period of unlawful detention—loss of liberty, disruption of family life, psychological strain, and reputational damage—could never be undone. As *Nken* instructs, irreparable harm cannot be speculative; it must be actual and concrete. 556 U.S. at 435. Mr. Rios's ongoing imprisonment without a lawful hearing meets that standard. Indeed, Mr. Rios already has a lawful status, *i.e.*, Temporary Protected Status for Venezuelans, which does not expire until November 2025 at the

earliest. So, it is unlikely Respondents would release Petitioner from custody regardless of the outcome of his immigration hearing scheduled for October 21, 2025.

**C. Balance of Equities Weighs in Mr. Rios's Favor.**

48. The balance of equities tips decisively in Petitioner's favor. On his side lies the interest in safeguarding one of the most fundamental rights recognized in our legal system—the right not to be arbitrarily detained without process. On the government's side, the only asserted interest is administrative convenience in applying the BIA's recent, and in this Circuit nonbinding, precedents.

49. There is no evidence that Petitioner poses a danger to the community or a risk of flight, and the dismissal of his recent criminal indictment further diminishes any legitimate basis for continued detention. In contrast, every additional day of unlawful confinement inflicts significant harm on Petitioner. When weighed against each other, the equities clearly support granting immediate relief.

50. Additionally, the undersigned Counsel for Petitioner has undertaken to contact counsel for the Department of Homeland Security by emailing the Office of Principal Legal Advisor for El Paso, counsel for Dallas ERO, as well as the U.S. Attorney's Office for the Eastern District of Oklahoma, in an attempt to notify Respondents of Petitioner's intent to obtain a hearing on this TRO request as soon as practicable.

**D. There Is Strong Public Interest In Maintaining the Pre-2025 Status Quo.**

51. Finally, the public interest strongly supports the issuance of a TRO. The Supreme Court in *Nken* explained that when the government is the opposing party, the balance of equities and the public interest merge. 556 U.S. at 435. The public has no interest in

perpetuating unlawful detention; rather, the public's interest is served by ensuring that government agencies act within the bounds of statutory and constitutional authority.

52. Granting Petitioner an individualized bond hearing promotes confidence in the integrity of the immigration system, reinforces respect for the rule of law, and prevents the arbitrary deprivation of liberty. Protecting fundamental due process rights is not just in Petitioner's interest, but in the interest of the public at large.

53. Each factor of the equitable test weighs heavily in Mr. Rios's favor. He has shown a substantial likelihood of prevailing on the merits based on the interpretation of Section 236(a) by various federal district courts and the Due Process Clause; he faces irreparable harm each day he remains detained without lawful process; the equities tilt overwhelmingly toward protecting his liberty; and the public interest is best served by ensuring that immigration detention is consistent with statutory and constitutional limits.

54. For these reasons, this Court should issue a Temporary Restraining Order at the earliest possible opportunity, requiring Respondents to provide Mr. Rios an immediate bond hearing or release.

## VIII. PRAYER FOR RELIEF

55. For the above and foregoing reasons, Petitioner respectfully requests that this Court take the following actions:

a. Issue a writ of habeas corpus ordering Respondents to provide Petitioner with an individualized bond hearing under INA § 236(a), 8 U.S.C. § 1226(a) within seven (7) days of the Court's order;

b. Grant a temporary restraining order and preliminary injunction requiring such a hearing, or Petitioner's immediate release;

c.   Issue a declaration that DHS may not initiate or pursue expedited removal against Mr. Rios while his § 240 removal proceedings remains non-final and while he seeks relief from removal before an Immigration Judge;

d.   Issue a declaration that the plain language of INA § 236(a) permits immigration judges to consider bond requests of noncitizens who are present without admission and are not classified as arriving aliens;

e.   Grant permanent injunctive relief as appropriate;

f.   Award Plaintiff reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 552(a)(4)(E), and any other applicable provision of law; and

g.   Grant such other relief as this Court deems just and proper.

DATE: October 7, 2025.

Respectfully submitted,

THE LAW OFFICE OF JOHN M. BRAY, PLLC
911 N. Bishop Ave.
Dallas, TX 75208
Tel: (855) 566-2729
Fax: (214) 960-4164
Email: john@jmblawfirm.com

By:   */s/ John M. Bray*_____
       John M. Bray
       Texas Bar No. 24081360
       ATTORNEY FOR PETITIONER

18

## VERIFICATION

STATE OF TEXAS          §
                                       §

COUNTY OF DALLAS       §

        BEFORE ME, the undersigned authority, on this day personally appeared ALIX YANIREE SUAREZ ROMERO ("AFFIANT"), known to me to be the person whose name is included in the foregoing document as Petitioner's girlfriend, and who after being by me duly sworn, stated that she is above the age of twenty-one (21) years of age, is of sound mind, and is in all ways competent to execute this verification. Affiant acknowledged that she had read the substance of the foregoing document, that she has personal knowledge of the facts contained herein, and that the factual statements contained herein above are true and correct to the best of Affiant's knowledge and belief.

_Alix Suarez_

ALIX YANIREE SUAREZ NAVARRO,
Affiant

        SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned Notary Public, on this the 2 day of October , 2025.

[SEAL]

NOTARY PUBLIC
STATE OF TEXAS
Joselyn Trinidad Martinez Rodriguez
Exp. 2/23/2028
ID No.134779355

NOTARY PUBLIC
In and for the State of Texas